UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICK COLLINS, INC.,

        Plaintiff,

v.

BARBARA SUTER,

        Defendant.

Civil Action No. 12-971 (BAH)

Judge Beryl A. Howell

## MEMORANDUM AND ORDER

In this copyright infringement action, the plaintiff, Patrick Collins, Inc. ("PCI" or "the plaintiff"), alleges that the defendant, Barbara Suter ("Suter" or "the defendant"), "is a persistent online infringer" of the plaintiff's copyrighted movies. First Am. Compl. ("FAC") ¶ 2, ECF No. 6. The amended complaint raises only a claim for direct infringement. Pending before the Court is the defendant's motion to dismiss or, alternatively, for summary judgment, ECF No. 14. For the reasons explained below, the defendant's motion will be DENIED without prejudice.

## I. BACKGROUND

### A. Factual Background

Over the first seven months of 2012, the plaintiff alleges that a computer assigned the Internet Protocol ("IP") address registered to the defendant used the file sharing service BitTorrent to download and distribute to others seven movies the plaintiff claims are copyrighted, thereby infringing the plaintiff's copyrights. *See* FAC ¶¶ 10, 20–21; FAC Ex. A, ECF No. 6-1. The defendant admits that "copyrighted content passed through [the defendant's] internet router," but disputes that the defendant was the person using the computer for purposes of infringing the plaintiff's copyrights. Def.'s Mem. Supp. of Mot. Dismiss or Alt. for Summ. J.

1

("Def.'s Mem. Supp."), ECF No. 14-1, at 2. Instead, the defendant has provided a sworn affidavit that the plaintiff's copyrighted material was downloaded by a houseguest, Amon Hotep ("Hotep"), without the defendant's knowledge or consent. *Id.* at 3.

### B. Procedural Background

This action was initially filed naming six unknown "John Doe" defendants. *See* Compl., ECF No. 1. The Court granted the plaintiff's motion for expedited discovery to determine the subscribers of the six IP addresses alleged to have been involved in downloading and distributing the plaintiff's copyrighted content. *See* Order Granting Pl.'s Mot. Leave to Serve Third Party Subpoenas, ECF No. 4, at 1. The plaintiff subsequently dismissed five of the six Doe defendants,[1] and filed the First Amended Complaint naming Suter as the only remaining defendant. *See generally* FAC.

In a letter, dated October 30, 2012, to the plaintiff's counsel, defendant's counsel demanded that the case be dismissed "immediately" since the defendant "never downloaded or used bit torrent, or any other file sharing software, and never accessed, reproduced, downloaded, stored, distributed, made derivative works from, or otherwise viewed any of the content listed in the attachment to the complaint in the Action." *See* Def.'s Mem. Supp. at 2; Def.'s Mem. Supp. Ex. A., ECF No. 14-4, at 1.[2] Defense counsel attached to his letter the defendant's sworn declaration attesting to factual representation contained in the letter. Def.'s Mem. Supp. at 2.

Apparently, having received no response to his letter, defense counsel made a follow-up telephone call to plaintiff's counsel. *See id.* As summarized in an email, dated November 5, 2012, to plaintiff's counsel, defense counsel was directed to speak to a person named "Elizabeth

---

[1] *See* Not. of Voluntary Dismissal re John Doe #4, ECF No. 5; Not. of Voluntary Dismissal re John Doe #1, 2, 5 and 6, ECF No. 7.
[2] Defense counsel also asserted that Suter was immune from any copyright infringement liability under 17 U.S.C §512(a). *Id.*

Jones," who said she worked for the plaintiff and was not a lawyer but was nonetheless authorized to discuss a settlement. *See* Def.'s Mem. Supp. Ex. B, ECF No. 14-4, at 4. Defense counsel made a settlement offer of $200 per copyrighted work alleged to have been infringed, which the defendant's counsel referred to as the "innocent infringer reduction," but Ms. Jones apparently rejected the offer. Defense counsel understood that the plaintiff was seeking a settlement in the amount of $7,000, or $1,000 for each of seven copyrighted movies allegedly infringed. *Id*. at 4–5.[3] According to defense counsel, Ms. Jones stated that she would inform the plaintiff's counsel that the two sides were "far apart." *Id.* at 4.

Following his conversation with Ms. Jones, defense counsel, via an email to plaintiff's counsel, requested what "additional information" from the defendant "such as by an interview, or some other verification of her declaration," the plaintiff would "need," and offered, "other cooperation to make your own determination that [the defendant] is not liable." *Id*. at 5. As part of her cooperation, the defendant acceded to the plaintiff's request and provided a signed declaration from Amon Hotep, in which he admits to using, while a houseguest in the defendant's residence, the defendant's wireless internet to download onto his laptop the movies identified in the complaint as copyrighted by the plaintiff. Def.'s Mem. Supp. Ex. C, ECF No. 14-4. In a series of emails, the plaintiff requested additional information regarding Hotep from the defendant, including "more concrete notation of his status . . . to establish sufficient domiciliary to defeat a challenge to personal jurisdiction," and an agreement by the defendant to "testify against her houseguest." Pl.'s. Mem. Opp. Def.'s Mot. Dismiss, Ex. B, ECF No. 15-2 at 1. The defendant responded to these requests, stating that the defendant "has no other relevant

---

[3] The exact position of Ms. Jones and her role in this litigation is shrouded in mystery. Thus, the plaintiff shall submit to the Court, within seven days, an explanation in the form of a declaration from Ms. Jones, or another person with knowledge of the facts in this litigation, regarding what Ms. Jones' position is, if any, with the plaintiff, her role in this litigation and whether she sought monies from the defendant for works that are not registered with the Copyright Office and, if so, the legal justification for so doing.

information" and reminding the plaintiff that it "has discovery devices available to it to obtain the information" it sought.  *Id.*

Citing the sworn declarations from the defendant and Hotep, the defendant has moved to dismiss this action or, alternatively, for summary judgment in her favor.  *See* Def.'s Mot. to Dismiss or Mot. Summ. J., ECF No. 14, at 1.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* FED. R. CIV. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Twombly,* 550 U.S. at 557).  Instead, the complaint must plead facts that are more than "'merely consistent with' a defendant's liability."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "[T]he plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *accord Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  The Court "must assume all the allegations in the complaint are true (even if doubtful in fact) ... [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged."  *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (citations and internal quotation marks omitted).

### B.     Conversion to Motion for Summary Judgment

The Federal Rules of Civil Procedure provide that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment," and if a motion is so converted, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  FED. R. CIV. P. 12(d).  "The decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court."  *Flynn v. Tiede–Zoeller, Inc.,* 412 F. Supp. 2d 46, 50 (D.D.C. 2006).  "In exercising this discretion, the 'reviewing court must assure itself that summary judgment treatment would be fair to both parties.'"  *Bowe–Connor v. Shinseki,* 845 F. Supp. 2d 77, 85–86 (D.D.C. 2012) (quoting *Tele–Commc'ns of Key W., Inc. v. United States,* 757 F.2d 1330, 1334 (D.C. Cir. 1985)).  Therefore, "[i]n converting the motion, district courts must provide the parties with notice and an opportunity to present evidence in support of their respective positions."  *Kim v. United States,* 632 F.3d 713, 719 (D.C. Cir. 2011).

If extra-pleading evidence "is comprehensive and will enable a rational determination of a summary judgment motion," a district court will be more likely to convert to summary judgment, but "when it is scanty, incomplete, or inconclusive," the district court is more likely to decline to convert to summary judgment and permit further discovery.  *See* 5C CHARLES ALAN WRIGHT, *ET AL.,* FEDERAL PRACTICE & PROCEDURE ("Wright & Miller") § 1366 (3d ed. 2012).  Thus, there is no bright-line threshold for conversion under Rule 12(d); the touchstone is fairness and whether consideration of summary judgment is appropriate, in light of the nature of the extra-pleading material submitted, the parties' access to sources of proof, and the parties' concomitant opportunity to present evidence in support or opposition to summary judgment.  *See id.*; *see also, e.g., White v. Vilsack,* 888 F. Supp. 2d 93, 100 (D.D.C. 2012) (declining to convert

to summary judgment because "the current record is not sufficiently developed to allow a determination as to whether a genuine dispute of material fact exists"). If a non-moving party is able to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to summary judgment, a court may defer consideration of the motion; deny the motion; or permit the non-moving party time to take discovery or obtain other extra-pleading material in opposition to summary judgment. *See* FED. R. CIV. P. 56(d).

### III. DISCUSSION

#### A. Summary Judgment Is Not Warranted Without Discovery

Summary judgment is "premature unless all parties have had a full opportunity to conduct discovery," *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (internal quotation marks omitted), and in this case it appears that no formal discovery has been requested or completed. The plaintiff refuses to admit any facts asserted by the defendant to be undisputed (pursuant to Local Civil Rule 7(h)), stating merely "Plaintiff disputes this allegation and respectfully requests that it be entitled to discovery to uncover the evidence necessary to disprove this statement." Pl.'s Statement of Genuine Issues, ECF No. 15-4, at 1–2. Presumably, the plaintiff has a good faith basis to believe the two sworn affidavits provided by the defendant are inaccurate or incomplete, because merely to dispute facts without such a good faith reason would be a violation of Federal Rule of Civil Procedure 11. *See* FED. R. CIV. P. 11(d) (noting that in presenting pleadings to the court, the attorney is asserting "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.").

The plaintiff is correct that before converting a 12(b)(6) motion into a summary judgment motion, "it must allow all parties both a reasonable opportunity to present all material made

pertinent to such a motion by Rule 56 and a chance to pursue reasonable discovery." Pl.'s Mem. Opp. Def.'s Mot. Dismiss ("Pl.'s Mem. Opp."), ECF No. 15 at 6 (quoting *Taylor v. FDIC.*, 132 F.3d 753, 765 (D.C. Cir. 1997)) (internal quotation marks omitted); *see also De Csepel v. Republic of Hungary*, 714 F.3d 591, 607 (D.C. Cir. 2013) (reversing dismissal of claim and agreeing with plaintiffs that "they should have been given the opportunity to develop [the] factual record … further past the Rule 12 stage.") (internal quotations omitted); *Kim*, 632 F.3d at 719 ("In converting the motion, district courts must provide the parties with notice and an opportunity to present evidence in support of their respective positions."). Nearly one year has elapsed since the plaintiff filed its First Amended Complaint naming the defendant but the plaintiff has nonetheless apparently undertaken no efforts to obtain formal discovery from the defendant, such as noticing a deposition, issuing interrogatories or making other discovery requests permitted under the Federal Rules of Civil Procedure. The defendant has been forthcoming in providing specific information upon informal request from the plaintiff, *see* Pl.'s Mem. Opp. at 2–3, and has consistently explained her willingness to assist in bringing this matter to resolution. *See, e.g.*, Def.'s Mem. Supp. Ex. D., ECF No. 14-4, at 9 ("If there is additional evidence gathering you need from our client please note my offer in the email [dated Nov. 5, 2012] below."); *id.* Ex. B, ECF No. 14-4, at 4. The plaintiff does not dispute that the defendant, at the plaintiff's request, provided a sworn declaration from the person who admits actually downloading the plaintiff's movies, in addition to a sworn declaration from the defendant herself. *See* Pl.'s Mem. Opp. at 2–3.[4]

---

[4] The plaintiff asserts that the defendant failed to provide a valid address for Hotep and, therefore, more information is needed. *See id.* As the defendant points out, however, the text of the declaration as well as the signature line to the declaration list Hotep's address, which is the same address as the defendant since Hotep is the defendant's houseguest. *See* Def.'s Mem. Supp. Ex. C.; *see also* Def.'s Mem. Reply to Pl.'s Mem. Supp. Opp. ("Def.'s Reply Mem."), ECF No. 16, at 3 n.3.

Despite the lengthy period of time in which the plaintiff has failed to seek any formal discovery, the Court will grant the plaintiff's request and provide a limited period of thirty days for the plaintiff to obtain discovery in order "to present facts essential to justify its opposition" to the plaintiff's motion for summary judgment. *See* FED. R. CIV. P. 56(d).  Accordingly, the defendant's Motion to Dismiss or, in the Alternative for Summary Judgment, is denied without prejudice at this time, and may be renewed following this limited period of discovery.[5]  In order to ensure that this period of discovery is expeditiously and constructively used, the plaintiff is directed to submit to the Court (1) in seven days, a written expedited discovery plan that details the discovery which will be needed, including the particular and precise issues on which it will be focused and the form or forms in which it will be requested; and (2) every week thereafter, a written report detailing the status of the ongoing discovery, including the progress that has been in the last week and the anticipated progress in the upcoming weeks.

### B. The Defendant Is Not Immune From Suit As An Internet Service Provider

The defendant also seeks summary judgment in her favor on the ground that she meets "each of the five requirements of Section 512(a) [of title 17]" to be entitled to "immun[ity] from

---

[5] The defendant has also moved to dismiss the FAC, under Federal Rule of Civil Procedure 12(b)(6), on grounds that "[t]he plaintiff has failed to plead the registrations of copyright," as required by 17 U.S.C. § 411(a). Def.'s Mot. Dismiss ¶ 2. In support of this contention, the defendant states that "failure to plead and attach the copyright registration certificates" to the complaint is fatal and requires dismissal of the infringement claims.  Def.'s Mem. Supp. at 8. The FAC contains the allegation that the plaintiff "is the registered owner of the copyrights set forth in Exhibit A," FAC ¶ 3; thus, the defendant's contention apparently boils down to the fact that the plaintiff did not attach to the FAC copies of the actual registration certificates of the allegedly infringed movies.  The plaintiff has attempted to cure this deficiency by attaching, as exhibits to its opposition memorandum, screen shots from the Public Catalog of the U.S. Copyright Office of copyright registrations for five movies.  *See* Pl.'s Mem. Opp., Ex.C, ECF No. 15-3.  This Court is skeptical that the proffered screen shots of the Copyright Office's database of registered copyrights, which is all the plaintiff has provided in this case, is sufficient proof of a certificate of copyright registration to cloak the plaintiff with the attendant benefits regarding *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate, under 17 U.S.C. § 410(c).  *See Malibu Media v. Parsons*, No. 12-cv-1331, ECF No. 27, (D.D.C. May 31, 2013). In view of the fundamental, jurisdictional question raised by the defendant regarding whether the plaintiff's claimed works are properly registered and whether the plaintiff has received certificates of registration for all of the claimed works, see Def.'s Mem. Supp. at 8; Def.'s Reply Mem. at 6-7, the plaintiff is directed to file with the Court, within ten days, certified copies of the copyright registration certificates for each work alleged to have been infringed.

any claim that copyrighted content passed through her router." Def.'s Mem. Supp. at 5. This argument for immunity as an internet service provider is unavailing.

The Digital Millennium Copyright Act ("DMCA") contains, in Title II, the "Online Copyright Infringement Liability Limitation Act" (OCILLA), which provides four "safe harbors" that allow qualifying service providers to limit their liability for claims of copyright infringement based on (a) "transitory digital network communications," (b) "system caching," (c) "information residing on systems or networks at [the] direction of users," and (d) "information location tools." 17 U.S.C. §§ 512(a)-(d); *see also Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012). To qualify for protection under any of the safe harbors, a party must meet a set of threshold criteria, including that the party must, in fact, be a "service provider."[6] OCILLA sets out two definitions for a "service provider," the first of which applies exclusively to the safe harbor provision claimed by the defendant under § 512(a) and is limited to service providers acting solely as "conduits" for the transmission of information directed or chosen by other users. *Columbia Pictures Indus. v. Gary Fung*, 710 F.3d 1020, 1040-1042 (9th Cir. 2013) ("§ 512(a) applies to service provides who act only as 'conduits' for the transmission of information"); H.R. Rep. 105-551(II), at 63 (1998) (explaining that the § 512(a) safe harbor is limited to service providers performing "conduit-only functions"). This definition requires that for an entity to qualify as a conduit-only "service provider," it must "offer[] the transmission, rout[e], or provid[e] [] connections for digital online communications, between or among points

---

[6] The party must also satisfy the conditions set forth in 17 U.S.C. § 512 by (1) adopting a policy that provides for termination of service access for repeat copyright infringers in appropriate circumstances, (2) informing users of the service policy, (3) implementing the policy in a reasonable manner, and (4) accommodating and not interfering with standard technical measures. *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1100 (W.D. Wash. 2004).

specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received." 17 U.S.C. § 512(k)(1)(A).

The defendant seeks to stretch the terms in the § 512(k)(1)(A) definition to cover a natural person, who "allow[s] a third party houseguest to access the internet through [a router from her cable company]." Def.'s Mem. Supp. at 6. The definition does not stretch this far. To reach this conclusion, the Court need look no further than the plain terms of the statutory language. Specifically, to be a "service provider" under § 512(k)(1)(A), the entity must "offer" to provide the service of "transmission, routing or providing connections for digital online communications." An internet service subscriber, who allows others to use his or her internet connection, is not, thereby, affirmatively "offering" such Internet connection services. *See Agence Fr. Presse v. Morel*, No. 10-2730, 2013 U.S. Dist. LEXIS 5636, at *45-55 (S.D.N.Y. Jan. 14, 2013) (after examining "the ordinary meaning of 'service,'" which means "'[t]he act of doing something useful for a person or company, [usually] for a fee'; '[a] person or company whose business it is to do useful things for others'; and '[a]n intangible commodity in the form of human effort, such as labor, skill, or advice,'" the court concluded that "the text of the statute, the ordinary definition of the word 'service,' the structure of the OCILLA safe harbors, the legislative history, and the cases applying the safe harbors uniformly suggest that a 'service provider' under OCILLA is an entity engaged in facilitating or supporting online access or the activities of users of the internet."); *accord Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 58 n 21 (1st Cir. 2012) (individual, whose website provided free allegedly copyrighted religious materials "likely would not qualify as an ISP under the DMCA's express provisions, see 17 U.S.C. §512(k), and even if he did, he has not complied with the specific

criteria necessary for an ISP to receive the protections of the DMCA's safe harbor provisions").[7] A houseguest's use of a residential Internet connection, even for purposes of which the subscriber is unaware, does not convert the subscriber's consent to such use into the purposeful engagement in the activity or business of offering an online service to others, which is a prerequisite to qualify for immunity as a conduit-service provider.

This conclusion is further confirmed by examination of the relief authorized by the statute against a conduit-service provider. The only injunctive relief available against a conduit-service provider meeting the criteria under 17 U.S.C. § 512(a), is an order requiring that the provider bar access "to a subscriber or account holder of the service provider's system or network… by terminating the accounts of the subscriber or account holder," or requiring the provider "to block access, to a specific, identified, online location outside the United States." 17 U.S.C. § 512(j)(1)(B). The statute refers to the user of a conduit-service provider's network as a "subscriber" or "account holder," which clearly contemplates a form of business relationship. Moreover, the conduit-service provider's withdrawal of authorization to access the network is effectuated, under the statute, by "terminating the accounts," not merely saying "no, you may not use my wireless router." In short, a natural person in the defendant's position, who claims a houseguest used her internet connection for purposes of which she had no knowledge, simply does not qualify as a "service provider." Therefore, the defendant's argument that she is immune from suit under the terms of §512(a) is without merit.

---

[7] Moreover, the word "person" is used throughout OCILLA to include reference to natural persons, but is not used in the definitional section. Rather, a different word "entity" is used in the definitional section and is a signal that Congress intended the entities that could qualify as service providers to be more narrowly construed than "persons" and to exclude natural persons.

## IV. CONCLUSION

For the reasons explained above, upon consideration of the memoranda filed in support of, and opposition to, the pending motion, the accompanying exhibits and declarations, and the entire record in this case, it is hereby

**ORDERED** that the defendant's Motion to Dismiss or in the Alternative for Summary Judgment, ECF No. 14, is DENIED, without prejudice to renew; and it is further

**ORDERED** that, on or before September 11, 2013, the plaintiff shall file with the Court certified copies of valid certificates of registration for each work the plaintiff alleges has been infringed by the defendant; and it is further

**ORDERED** that, on or before September 9, 2013, the plaintiff shall file with the Court, a declaration providing information as detailed in this Memorandum regarding "Elizabeth Jones;" and it is further

**ORDERED** that, for a period of thirty days until October 1, 2013, the plaintiff shall be permitted take discovery of any facts essential to justify its opposition to the plaintiff's motion for summary judgment; and it is further

**ORDERED** that, on or before September 9, 2013, the plaintiff is directed to file with the Court a written expedited discovery plan that details the discovery needed, including the particular and precise issues on which the discovery will be focused and the form or forms in which discovery will be requested; and it is further

**ORDERED** that every seven days thereafter, the plaintiff is directed to file with the Court a written report detailing the status of the ongoing discovery.

**SO ORDERED**

Date: September 1, 2013

_____
BERYL A. HOWELL
United States District Judge